In the Matter of the Estate of HYMAN HARKAVY, Deceased.

Surrogate's Court, New York County, April 20, 1945.

*Charles J. Nehrbas* for Henry J. Harkavy, as executor, petitioner.

*M. E. Balt* for Harry Harkavy and another, as coexecutors, petitioners.

*Maurice Neckritz* for Nathan Harkavy, respondent.

*Lawrence I. Gerber* for William C. Rittenberg, special guardian for Lillian H. Lane, an incompetent, respondent.

*Nathaniel L. Goldstein, Attorney-General of the State of New York,* for Pilgrim State Hospital, respondent.

*Edward A. McInnes,* attorney designated by Alien Property Custodian, for Aaron Harkavy and others, persons within enemy-occupied territory, respondents.

*Blum & Jolles* for Consul General of the Republic of Poland on behalf of Maryasia Rabinowitz and another, citizens and residents of the Republic of Poland, respondent.

DELEHANTY, S. The preliminary question in this proceeding for the judicial settlement of the account of the executors is whether the incompetent beneficiary, Lillian Harkavy Lane, is estopped either in whole or in part from urging her objections to the accounts now before the court for settlement. (The court next states the origin of the issue before it by reciting the appointments of estate representatives and their respective accountings. It recites the fact that one of the beneficiaries while competent participated in transactions and joined in instruments asserted by the accounting parties to constitute an estoppel against her to urge objections now made in her behalf by a special guardian. The evidence presented in support of the claim of estoppel is analyzed by the court and the conclusion reached that in major degree the defense.is insufficient and that a hearing on the merits of the objections is necessary.)

The conclusion reached on the defense of estoppel makes it necessary to comment on a ruling made in the course of the. hearing respecting a tender of proof of a personal transaction with the incompetent. Preliminarily it should be noticed that the General Construction Law (§ 28) defines the terms " lunatic and lunacy " as inclusive of every kind of unsoundness of mind except idiocy. It should be noted, too, that the rights of lunatics are protected by the court without regard to the existence or nonexistence of a committee. (*Kaplan* v. *Kaplan,* 256 N. Y. 366.) Indeed a lunatic's rights may be assured through a guardian ad litem more effectively than through a committee (*Walter* v. *Walter,* 217 N. Y. 439) in certain cases. " Incompetent persons become the wards of the court, upon which a duty devolves of protection both as to their persons and property. This duty is not limited to cases only in which a committee has been appointed, but it extends to all cases where the fact of incompetency exists; and if the contention of the defendant's counsel with reference to his condition is true, a case was presented in which the duty of protection of the defendant's interest devolved upon the trial court " (*Wurster* v. *Armfield,* 175 N. Y. 256, 262; and see, also, *Martin* v. *Teachers' Retirement Bd.,* 269 App. Div. 115).

Stress is laid by the executors on *Clark* v. *Dada* (183 App. Div. 253). In the cited case a new trial was ordered for error in excluding evidence and a majority of the court concurred in the opinion of one of its members which among other things said that the provisions of section 829 of the Code of Civil Procedure (the source of section 347 of the Civil Practice Act) permitted testimony of transactions with a lunatic if the lunatic had

no committee. The ruling so made was unnecessary to the decision and for that reason may be treated as obiter. The court as a whole held that the door had been opened to the giving of the excluded testimony. One of the judges expressly dis- sented from the construction given to the statute.

It is to be noted that here the lunatic is a party to the pro- ceeding and that the court has undertaken to protect the lunatic by the appointment of a special guardian for her. For the purpose of this litigation at least the special guardian has the same rights and the same duties as a committee would have in the protection of the lunatic's interests. A reasonable con- struction of the statute requires the holding that the repre- sentative of the lunatic appointed by the court itself is the equivalent of a committee so far as the terms of section 347 of the Civil Practice Act are concerned. When closely examined the section seems to this court to make no distinction such as the cited case is said to make. There can be no reasonable doubt that a lunatic without a committee is more in need of protection than one who has a committee. It sounds like an unreasonable construction of the statute to say that a lunatic who has no property except perhaps that concerned in a litiga- tion and for whom therefore no committee need be sought in advance of a trial is at the peril of unrestrained testimony con- cerning transactions with him and that the court, though it appoints a guardian for his special protection, is helpless to sustain such guardian's objections to testimony which the luna- tic is unable to comprehend or refute. Those who concur in the viewpoint of Professor Wigmore (2 Wigmore on Evidence, § 578) that such exclusions should not be in the law at all would perhaps regard the helplessness of the lunatic as inconsequential but it seems clear that the policy of this State has been sufficiently declared by the enactment of the original statute and by the respective amendments to it. The court understands the policy so stated to be that the lunatic like the dead is protected against the presentation of evidence which he cannot refute. Here there is no actual adjudication by the Supreme Court that the lunatic is insane, but her long incarceration in an institution for the insane establishes her insanity, a state not really disputed by the accounting parties.

The merits of the objections will be heard by the court on the 28th day of May, 1945, at 10:00 A.M. Proceed accordingly.